ams

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-40043-01-JAR |
| ) | |
| JOHN R. KOLTHOFF, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

The Court now considers defendant John R. Kolthoff's: Request for Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (Doc. 33); Motion for Discovery of Drug Detection Dog Information and Suggestions in Support Thereof (Doc. 37); and Motion to Suppress (Doc. 34). Because the request for Rule 404(b) evidence is unopposed, the Court grants this motion. Also, the Court grants in part defendant's motion for discovery of drug detection dog information. The government must produce evidence of training and certification records for the drug detection dog, Rocket, but is not required to produce the other information requested in this motion.

Defendant moves to suppress evidence obtained during a search of his rental vehicle on May 14, 2005. The Court held an evidentiary hearing on defendant's motion on March 6, 2006 and the parties were given additional time to supplement their briefs. After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, defendant's motion to suppress is denied.

**I.  Factual Background**

On May 14, 2005 at approximately 10:54 a.m., Trooper Joseph Ziegler of the Kansas Highway Patrol conducted a "welfare check" of the occupants of defendant's rental vehicle at a rest area on I-70 at mile post 309.  The rental vehicle was a 2005 white Crown Victoria ("Victoria"), bearing a California license plate and displaying more than ten personalized decals on the back bumper and rear and side windows.  Trooper Ziegler testified that this particular rest area is a somewhat isolated location, mainly used for RV parking, and that often he finds stolen vehicles in that rest area.  At some point, Trooper Ziegler ran the license tag through dispatch and discovered that this was a rental vehicle.  Trooper Ziegler had been trained that the practice of placing decals on a rental vehicle was unusual and often done in an attempt to disguise the vehicle as privately owned.  In this case, most of the stickers were American flag stickers and stickers indicating support for troops and firefighters.

Trooper Ziegler approached the car and knocked on the passenger side window, at which point, the female passenger, Tia Vander Yacht, uttered "cops" to defendant, who was sitting in the driver's seat.  Trooper Ziegler noticed cigarette wrappers, ashes, food wrappers and bags, and energy drink cans in the interior of the vehicle.  Defendant informed Trooper Ziegler that he was traveling from New York and that he was a firefighter.  He offered Trooper Ziegler non-photo identification that he was a firefighter.  Trooper Ziegler was suspicious of defendant because of the decals on the rental vehicle, Yacht's warning to Kolthoff when Trooper Ziegler approached the vehicle, and the fact that Kolthoff offered up information that he was a firefighter so willingly.  Trooper Ziegler asked for consent to search the vehicle and was refused.  But Koltoff asked Trooper Ziegler where the nearest motel was located, and the trooper directed defendant to

a Holiday Inn Express ("Holiday Inn") in Junction City, Kansas at approximately 11:15 a.m.

Toward the end of this encounter, Lieutenant John Guerrero of the Kansas Highway Patrol pulled into the rest area behind Trooper Ziegler's vehicle. Trooper Ziegler relayed the encounter to Lt. Guerrero after defendant left and Lt. Guerrero replied that he would follow defendant's vehicle. Lt. Guerrero followed defendant to the Holiday Inn in Junction City and parked his vehicle directly behind defendant's in the hotel parking lot.[1] Although Lt. Guerrero exchanged glances with defendant, defendant and Yacht proceeded to check in to the hotel. Soon after, Lt. Guerrero called dispatch and requested a drug detection dog be brought to the hotel parking lot. Thereafter, Lt. Guerrero called Sargeant Patricia Giordano with the Junction City Police Department for assistance and she arrived around noon and parked next to Lt. Guerrero's vehicle. After Lt. Guerrero conveyed to her his suspicion that defendant's vehicle contained drugs, Sgt. Giordano spoke to the hotel clerk and obtained the room number where defendant and Yacht were staying.

At approximately 12:25 p.m., Officer Scott Hagemeister of the Riley County Police Department arrived with his dog, Rocket. Rocket has been a certified K-9 for two years. Rocket was trained to identify the odor of drugs and his response to the odor is an indication of the location of drugs. Officer Hagemeister testified that he is able to interpret dog behavior that falls short of aggressive.

Lt. Guerrero relayed to Officer Hagemeister that the Victoria was a rental vehicle with decals, and the circumstances of Trooper Ziegler's encounter with the pair at the rest area. Officer Hagemeister led Rocket around the vehicle starting at the left side, counterclockwise.

---

[1] The Crown Victoria was parked with its nose facing out, so it would have been able to drive forward without being blocked in. (Ex. 1 at 11:20.)

The canine began heavily sniffing, compared to his interest in the rest of the vehicle, the trunk area on two occasions and then looked to Officer Hagemeister. Lt. Guerrero told Officer Hagemeister during this time that he believed it was more likely that there was money in the vehicle than drugs. Officer Hagemeister testified that he commented to the other officers that Rocket's lack of aggression could be an indicator that there is currency in the vehicle, as opposed to drugs.[2] The videotape of the sniff shows Officer Hagemeister telling the other two officers that the dog indicated on the trunk and the officers can be heard agreeing that it looked like Rocket indicated. Lt. Guerrero asked Officer Hagemeister if he was sure he "picked up on something" and Officer Hagemeister replied that he was sure. He relayed that Rocket is a laid back dog and is not excitable.

Sgt. Giordano then called the county attorney, who relayed to the officers that they had enough probable cause to search the vehicle. Sgt. Giordano and Lt. Guerrero went to the hotel room defendant was staying in and knocked on the door. Defendant opened the door and appeared to the officers to have been sleeping. Yacht was in bed. Officer Giordano did a protective sweep of the room and the officers informed Kolthoff of the dog alert on his rental vehicle. Kolthoff refused consent to search again and insisted that there were no drugs in the vehicle. The officers had defendant and Yacht follow them to the parking lot while they conducted a search of the vehicle. During the search, the officers found a number of weapons in the trunk, a United Nations beret, and foreign passports. Although no drugs were found in the vehicle, officers did locate rolling papers and a citation from North Carolina against defendant for marijuana possession. Defendant admitted to smoking marijuana in the vehicle at some point

---

[2] He testified that Rocket was trained on new currency, so that he could distinguish between the smell of "clean" currency, and currency that has been in contact with drugs.

prior to arriving in Kansas.

## II.  Discussion

Defendant now argues that the search of his rental vehicle was unlawful because it was not based on probable cause.  Defendant argues first that Rocket did not in fact alert to controlled substances in the vehicle; and alternatively, that a dog alert is insufficient to support probable cause.[3]

### A.  *Sufficiency of the Canine Alert*

In *United States v. Ludwig*,[4] the Tenth Circuit held that a canine drug sniff of a parked car in a motel parking lot conducted without particular suspicion is lawful because it does not constitute a Fourth Amendment search.[5]  This is because the defendant has no legitimate expectation of privacy in a public parking lot.[6]  Therefore, as an initial matter, it did not matter whether reasonable suspicion from Trooper Ziegler's welfare stop was exhausted, and Lt. Guerrero did not need reasonable suspicion to request that a canine unit be dispatched to the hotel.  The dog sniff itself did not constitute a search.  The Court's inquiry then is limited to whether Rocket's alert, by sniffing heavily in the trunk area and turning toward his handler, suffices to support a probable cause determination.

The extent of defendant's argument on this point is that "[a] viewing of the video tape

---

[3]In his original motion, defendant argues further that he was detained in his hotel room without reasonable suspicion and that he did not consent to the search of his vehicle.  (Doc. 34.)  The government responded, however, that it does not rely on his consent to search, and that the defendant was not detained until after the dog sniff provided probable cause to search.  Defendant does not appear to pursue these arguments in its supplemental brief.  Nevertheless, the Court will briefly address these arguments in its discussion.

[4]10 F.3d 1523 (10th Cir. 1993).

[5]*Id.* at 1526–27; *cf. Illinois v. Caballes*, 543 U.S. 405, 409 (2005) ("the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests.").

[6]*Ludwig*, 10 F.3d at 1526.

would lead any reasonable person to the conclusion that Rocket did not alert, and that there is no reason to believe that evidence of a crime would be found in Mr. Kolthoff's vehicle." According to defendant's rendition of the dog sniff shown on the tape, Rocket "seemed to pay particular attention to the vehicle" for only a few seconds, which was nothing more than what one would expect from a dog in the act of searching for drugs. The Court disagrees. Neither defendant nor the Court is in a position to render an expert opinion on the sufficiency of Rocket's alert. However, Officer Hagemeister testified that Rocket in fact alerted, based on his experience as his handler. He further testified that Rocket is a laid back dog that does not excite easily over the prospect of a reward like some dogs.

Additionally, an independent review of the videotape shows that Rocket did more than "pay attention" to the rear of the vehicle on two occasions during the sniff. He was heavily sniffing the trunk area of the vehicle, twice, and then looked to his handler. Also, the officers can be heard agreeing that the dog appeared to alert to the trunk of the vehicle. Lt. Guerrero explicitly asked Officer Hagemesiter if he was sure that Rocket "picked something up" and Officer Hagemeister assured him that he had, but was just a laid back dog.[7] Defendant essentially asks the Court to discount this testimony. The Court finds no evidence in the record to contradict the officers' testimony and the apparent alert by Rocket on the videotape.

### B. Sufficiency of the Canine Alert to Support Probable Cause

It is well-settled that a canine alert to the presence of drugs in a lawfully detained vehicle

---

[7]Defendant maintains that Lt. Guerrero's comment that he believed it was more likely that there was currency, as opposed to drugs, in the vehicle is not probative. This does not discount the fact that Rocket alerted to the rear of the vehicle.

alone will establish probable cause to search the interior of that vehicle.[8]  However, the Tenth Circuit also recognizes that "a dog alert might not give probable cause if the particular dog has a poor accuracy record."[9]  Defendant's primary argument is that a canine alert fails to provide an officer with any temporal proximity of the contraband.  Defendant argues that this is especially true under the facts of this case because defendant was driving a rental vehicle which changes hands on a regular basis.  Therefore, the defendant asks the Court to disregard the long-standing law to the contrary and hold that a canine alert must be accompanied by other indicia of suspicion, especially where, as here, the search is of a rental vehicle.

The Court declines defendant's invitation to graft a new requirement onto the law that a canine alert creates the necessary probable cause to search a lawfully detained vehicle so long as the canine is reliable.  As the Supreme Court stated recently, "[a]lthough respondent argues that the error rates, particularly the existence of false positives, call into question the premise that drug detection dogs alert only to contraband, the record contains no evidence or findings that support his argument."[10]  Likewise, the record here contains no evidence about the reliability of drug detection dogs in general or Rocket in particular.

Defendant suggests that Rocket is unreliable because there were no drugs found in the vehicle.  Probable cause means that "there is a fair probability that contraband or evidence will be found in a particular place."[11]  A dog alert is generally at least as reliable as many other

---

[8]*See, e.g.*, *United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005); *United States v. Carter*, 64 Fed. Appx. 109, 114 (10th Cir. 2003); *Ludwig*, 10 F.3d at 1527–28.

[9]*Ludwig*, 10 F.3d at 1538.

[10]*Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

[11]*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

7

sources of probable cause and "is certainly reliable enough to create a fair probability that there is contraband [present]."[12]  However, probable cause requires that the alert be made by a trained dog.[13]  The Tenth Circuit has explained that:

> With a canine, the reliability should come from the fact that the dog is trained and annually certified to perform a physical skill. When the annual certification process involves actual field testing and grading of the canine's drug-detection skills, the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance.[14]

Defendant does not challenge Rocket's two-year long certification or his continual training. Moreover, defendant does not challenge Officer Hagameister's training as Rocket's handler or his testimony regarding Rocket's reliability.  Because defendant fails to present evidence sufficiently challenging the reliability of Rocket's alert, the Court sees no legal basis for rejecting the established principal that the canine sniff here provided probable cause to search defendant's vehicle.  Also, because the officers had already established probable cause that there was contraband in defendant's vehicle before confronting defendant, they did not require his consent to search and there was nothing improper about detaining him during the search.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Kolthoff's Motion to Suppress (Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED BY THE COURT** that defendant's Motion for Discovery of Drug Detection Dog Information and Suggestions in Support Thereof (Doc. 37) is

---

[12]*Ludwig*, 10 F.3d at 1527–28.

[13]*United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997), *cert. denied*, 525 U.S. 863 (1998).

[14]*Id.* (quoting *United States v. Wood*, 915 F. Supp. 1126, 1136 n.2 (D. Kan. 1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir. 1997)).

**GRANTED IN PART AND DENIED IN PART.**  The Government shall provide defendant with any information concerning training and certification of Rocket if it has not done so already.  The remainder of the motion is denied.

**IT IS FURTHER ORDERED BY THE COURT** that defendant's Request for Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (Doc. 33) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this  10th  day of April 2006.

    S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**